600 So.2d 156 (1992)
Joseph STELLY, Plaintiff-Appellee,
v.
UNITED PARCEL SERVICE, et al, Defendants-Appellants.
No. 90-1393.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
Guglielmo, Lopez, Tuttle, Hunter & Jarrell, H. Douglas Hunter, Opelousas, for defendants-appellants.
Morrow, Morrow, Ryan & Bassett, James S. Gates, Opelousas, for plaintiff-appellee.
*157 Before DOMENGEAUX, C.J. and COREIL[*] and SALOOM[*], JJ. Pro Tem.
JOSEPH E. COREIL, Judge, Pro Tem.
In this worker's compensation action, the defendant employer, United Parcel Service, and its insurer, Liberty Mutual Insurance Company, appeal the final judgment ordering defendants to pay medical expenses incurred by the claimant, Joseph Stelly.

FACTS
On December 16, 1987, Stelly suffered a compensable low back injury when he fell while pulling on an overhead door. As a result, Stelly remained off work and received compensation from December 16, 1987, through May 30, 1989.
On December 17, 1987, Stelly was examined by his family physician, Dr. L.H. Boulet. Experiencing but little improvement, Stelly elected to see Dr. Michel Heard, a Lafayette orthopedist, on February 11, 1988. Dr. Heard performed a lumbar Magnetic Resonance Image (MRI) on March 2, 1988, and found no indication of a pinched nerve or ruptured disc. When Stelly continued to complain, Dr. Heard offered to perform further diagnostic studies, which included a bone scan, myelogram, and post-myelographic CAT scan. The tests were performed at the end of March and were determined to be normal. Dr. Heard concluded that Stelly had a soft tissue strain in the muscles and ligaments, and that it was not an operable problem.
Stelly continued to consult Dr. Heard and was seen by him on April 12, May 3, May 26, June 7, July 19, and August 16, 1988, still complaining of pain in his lower and mid-back. During this course of treatment, more lumbar x-rays were taken, and nerve conduction and EMG studies were also performed. The tests showed no changes in the lumbar vertebrae and no evidence of nerve impingement. On the July and August examinations, Stelly was no longer complaining of pains in his lower extremities. Dr. Heard concluded that Stelly had not sustained a bone injury, a disc injury, or a nerve injury. Dr. Heard released Stelly to return on an "as needed" basis. Stelly never returned to Dr. Heard.
Following Dr. Heard's release, Stelly sought treatment with a second orthopedist of his choice, Dr. John Cobb, who first saw Stelly on August 31, 1988. Dr. Cobb reviewed the entirety of Dr. Heard's diagnostic studies, and agreed with Dr. Heard that Stelly did not have a disc-related condition. Dr. Cobb was of the opinion that Stelly may have been suffering from pain in the facet joints, and he suggested therapeutic steroidal injections. These were administered on December 15, 1988. Unfortunately, no relief was obtained from these injections, thus ruling out the facet joints as the origin of his symptoms. Dr. Cobb referred Stelly to a physical medicine specialist, Dr. Daniel Hodges.
Stelly was examined by Dr. Hodges on March 9, 1989. Dr. Hodges' initial impression was that the claimant was suffering from a muscular ligamentous strain of the low back. Conservative treatment followed, consisting of muscle stimulation and physical therapy. Anti-inflammatory agents were prescribed. Improvement was noted and, by April 13, Dr. Hodges indicated that Stelly's back problems were "minimal."
By June 12, Dr. Hodges felt Stelly was able to return to work, and Stelly, in fact, did so. After his return to work, Stelly visited Dr. Hodges again on August 8. His complaints then were limited to aches and pains. Stelly was evaluated again on September 11. Additional studies, including a sedimentation rate and an ANA, were performed to rule out any underlying arthritic problem. The results of these studies were normal.
Stelly's last visit to Dr. Hodges was on October 9, 1989, at which time Dr. Hodges concluded that no further medical care was indicated.
*158 In addition to the on-going treatment by Dr. Hodges, the defendant sent Stelly to a neurosurgeon, Dr. Anthony S. Ioppolo. On March 23, 1989, Dr. Ioppolo conducted a thorough clinical examination and reviewed the prior diagnostic studies. Dr. Ioppolo concluded, after the exhaustive neuro-diagnostic work-up, that there were no abnormalities. Furthermore, the examination did not show any focal neurological deficits, and no treatment was required.
Also, a neurological examination was performed by Dr. Patricio Mujica, a neurosurgeon, on May 23, 1989. Dr. Mujica concurred in the patient's release to return to work.
On August 14, 1989, Stelly, upon recommendation by his counsel in this case, elected to visit Dr. Henry LaRocca, an orthopedist in New Orleans. Dr. LaRocca reviewed Dr. Heard's treatment and diagnostic studies and agreed that they were normal. Stelly returned to Dr. LaRocca in April of 1990. Dr. LaRocco undertook additional diagnostic studies, including a repeat MRI, a repeat EMG, a repeat nerve conduction study, a repeat myelogram, and a discography. Stelly incurred charges of more than $5,000 in medical expenses for Dr. LaRocca's services. Dr. LaRocca discovered degenerate discs at L-3-4 and L-4-5, which produced pain, and which would require surgery. On June 4, 1990, Stelly's right leg gave out at work, causing him to fall. As a result of the fall, he did not return to work, and his worker's compensation benefits were resumed.
The dispute herein involves Dr. La-Rocca's treatment and the associated medical expenses. Defendants refused to pay for the expenses incurred, contending that the treatment was not authorized pursuant to the worker's compensation statutes. The Office of Worker's Compensation recommended that Dr. LaRocca's treatment, as well as his recommended additional diagnostic studies, were not reasonable or necessary and thus, not compensable under the Worker's Compensation Law. The Office of Worker's Compensation additionally found that if Stelly were in need of further orthopedic care, he should return to one of the prior treating physicians.
The matter proceeded to trial. The trial judge, after conducting a hearing, ordered defendants to pay for Stelly's treatment with Dr. LaRocca, as well as pay for all outstanding charges previously incurred. The trial judge rejected Stelly's demand for statutory penalties and attorney's fees.
Defendants appeal, contending the trial judge erred in ordering them to pay for Stelly's continued treatment with Dr. La-Rocca and in ordering them to pay for the outstanding medical expenses of Dr. La-Rocca, which were incurred without their consent.

DISCUSSION
The applicable law is found in La.R.S. 23:1121, which provides:
"§ 1121. Examination of injured employee
A. An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payments under this Chapter. The employer or his worker's compensation carrier shall not require the employee to be examined by more than one duly qualified medical practitioner in any one field or specialty unless prior consent has been obtained from the employee.
B. The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker's compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
C. If the employer or insurer has not consented to the employee's request to *159 change physicians when such consent is required by this Section, and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney's fees related to this dispute and for any medical expense so incurred by him for an aggravation of the employee's condition resulting from the withholding of such physician's services.
D. After all examinations have been conducted but prior to any order directing the injured employee to return to work, the employee shall be permitted, at his own expense, to consult with and be examined by a physician of his own choosing. Such report shall be considered in addition to all other medical reports in determining the injured employee's fitness to return to work. Should disagreement exist, after such consultation and examination, as to the fitness of the employee to return to work, the provisions of R.S. 23:1123 shall be followed."
In this case, Stelly selected Dr. Heard as his treating physician in the orthopedic field. Dr. Heard concluded that Stelly did not have a disc problem, did not have a pinched nerve, did not have a ruptured disc, and did not have any problem that needed any kind of surgery. According to Dr. Heard, Stelly had a soft tissue strain in the muscles and ligaments, and it was not an operative problem.
Under the provisions of La.R.S. 23:1121(B), quoted above, Stelly was then required to obtain prior consent from his employer, or its worker's compensation insurer, before seeing Dr. LaRocca, who is also an orthopedist. We note, in fact, that this was Stelly's third selection of an orthopedist. Stelly did not obtain consent before seeing Dr. LaRocca; therefore, the defendants, relying on this statute, refused to pay for the medical expenses incurred.
Despite having been released by Drs. Heard and Hodges, Stelly continued to complain of neck and back pain. This continuous pain eventually led Stelly to Dr. LaRocca. According to Stelly, he decided to have Dr. LaRocca examine him because he heard the technology was more updated and "wanted the best care that he could get."
After performing a series of tests, Dr. LaRocca found that since December of 1987, Stelly's condition had steadily deteriorated and gotten progressively worse. During the examination, the electrical tests showed nerve impingement and the requirement of surgery.
Dr. LaRocca testified that technology had improved since Stelly's accident and greater clarity of detail is available through the MRI. His testimony with regard to the need for the MRI done in April, 1990, corroborates that of Dr. Heard and Dr. Cobb. We further note that had Dr. LaRocca not ordered the repeat series of tests, Stelly's condition may not have been detected.
There is no evidence that Stelly was untruthful in his complaints of pain or that he exaggerated the pain. Considering Stelly's second fall in 1990, and the findings of Dr. LaRocca, no reasonable justification can be made for not authorizing the recommended treatment, or in refusing to pay the related expenses.
At the time Stelly's claim arose, La.R.S. 23:1203 provided, in pertinent part, as follows:
"§ 1203. Duty to furnish medical expenses; prosthetic devices; other expenses
A. In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. All such services and treatment shall be performed at facilities within the state when available."
Defendants rely on our decision in Fontenot v. Fireman's Fund Insurance Co., 549 So.2d 917 (La.App. 3 Cir.1989), where we affirmed the trial court's denial of medical *160 expenses based on the claimant's failure to obtain prior consent from her employer. In affirming, we noted that the trial court "obviously concluded that the examination of plaintiff by Dr. Jackson was not necessary medical treatment." Id. at 920. However, in the instant case, the trial court obviously concluded that the treatments by Dr. LaRocca were necessary medical treatments. After a careful review of the record, we cannot say that this conclusion was manifestly erroneous.
The first visit to Dr. LaRocca was made without the consent of the defendants, and was thus Stelly's responsibility. However, as for the April 11, and subsequent tests, procedures, and follow-up visits, Stelly has established the reasonableness and necessity of the examination and treatments.
In sum, we affirm the trial court's ruling ordering the defendants to pay the additional medical expenses, but amend to exclude the expense incurred upon Stelly's initial visit of August 14, 1989.
Costs of this appeal are cast to the defendants, United Parcel Service and Liberty Mutual Insurance Company.
AFFIRMED, AS AMENDED.
NOTES
[*] HONORABLE JOSEPH E. COREIL, Retired, and HONORABLE KALISTE SALOOM, JR., participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.