676 So.2d 612 (1996)
Mary J. PERRODIN, Plaintiff-Appellee.
v.
ST. LANDRY PARISH SCHOOL BOARD, Defendant-Appellant.
No. 95-1563.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1996.
*613 John L. Olivier, New Orleans, for Mary J. Perrodin.
Peter Forrestt Caviness, Opelousas, for St. Landry Parish School Board.
Before DOUCET, C.J., and SULLIVAN and GREMILLION, JJ.
SULLIVAN, Judge.
Mary Perrodin, a former employee of the St. Landry Parish School Board, was injured in a work-related accident on November 30, 1990. The School Board paid her temporary total disability benefits (TTD) of $162.19 per week through August 4, 1994, terminating payments after she refused the School Board's offer of a modified position. In November of 1994, Perrodin filed the instant claim, seeking reinstatement of benefits, penalties, and attorney fees. In March of 1995, the School Board began paying Perrodin supplemental earnings benefits (SEB) of $34.85 per week, retroactive to the termination of TTD, based upon the difference in pay between her former job and the modified position.
The case was tried on May 8, 1995. At the close of evidence, the hearing officer commented favorably on Perrodin's credibility. The hearing officer found that Perrodin continued to suffer severely from pain related to this accident and that Perrodin was "not capable of returning to work because of pain." The order signed by the hearing officer, dated August 29, 1995, awarded Perrodin (1) past TTD of $162.19 per week from August 4, 1994, through the date of the order; and (2) future TTD for an additional six months, during which time Perrodin is to undergo aggressive physical therapy and vocational rehabilitation as recommended by a psychologist, and after which time the School Board may file a rule to litigate Perrodin's further entitlement to benefits. The hearing officer also rejected Perrodin's claims for penalties and attorney fees.
The School Board appealed, contending that the hearing officer erred in awarding past TTD on the basis of "working in pain" and future TTD for a specific period of time, six months. Perrodin answered the appeal, arguing that she is totally and permanently disabled and is entitled to penalties and attorney fees. For the following reasons, we affirm in part, reverse in part and remand.

Discussion of the Record
Perrodin was employed by the School Board as a special education teacher's aide and bus attendant. Her job included transporting and supervising handicapped children on the school bus and refereeing the children as they played various sports. She also coached the children's basketball and volleyball teams for the Special Olympics.
During the morning bus route of November 30, 1990, Perrodin felt a sharp pain in her back as she lifted a wheelchair-bound student onto the bus. She testified that she continued to work in pain that day and for a few weeks, until the pain became so intense that she could not lift her right leg.
She first sought treatment from two family practitioners, Dr. Fruge and Dr. Dugal; they soon referred her to an orthopedic surgeon, Dr. Frazer Gaar. On December 29, 1990, Perrodin went to the emergency room of Doctors' Hospital of Opelousas, complaining of pain and inability to rest after having received an epidural steroid injection. Perrodin remained in the hospital for several days, during which time Dr. Gaar ordered a lumbar myelogram and post-myelogram CT scan. An earlier CT scan ordered by Dr. Fruge indicated a problem at L5-S1, central and to the right. The two tests ordered by Dr. Gaar also revealed a small focal herniation on the right. This result was later confirmed by a lumbar MRI.
Dr. Gaar initially believed that the disc herniation was self-contained and could be treated surgically with discography, followed by a chymopapain injection. This procedure was performed on January 10, 1991, but it did not yield the results Dr. Gaar expected. Postoperatively, Perrodin developed blurred vision, headaches, and severe muscle spasm; she also complained of constant pain in the *614 lower back, extending through the right extremity, and a burning sensation in the right great toe. On March 6, 1991, Dr. James Domingue, a neurologist, recommended a repeat myelogram. Although Perrodin refused to undergo another myelogram, repeat MRI and CT scans still revealed a protrusion at L5-S1. After three months of continued symptoms, Dr. Gaar concluded that the chymopapain procedure was not effective and that Perrodin was probably experiencing nerve root irritation, for which he recommended surgical compression of the nerve root.
On April 8, 1991, Perrodin was examined by another orthopedic surgeon, Dr. John Cobb. On that date, Dr. Cobb observed bilateral paravertebral muscle spasm, limited range of motion, positive straight leg raising on the right, and a right decreased Achilles reflex. The neurological exam of the left lower extremity was normal. These results, combined with her complaints of lower back pain and shooting pains, numbness, and burning in the right extremity through the great toe, led Dr. Cobb to recommend an L5-S1 laminectomy, disc excision, and fusion.
Dr. Cobb performed the recommended surgery on August 14, 1991. The complete record of Dr. Cobb's postoperative care is not in evidence; however, the mileage reports submitted by Perrodin indicate that she regularly saw Dr. Cobb, Dr. Fruge, and attended physical therapy through 1994. She also saw Dr. Robert Franklin from March through July of 1993. In July of 1993, Dr. Franklin noted that he would consider a return release to duty as a teacher's aide if a recent MRI revealed no surgically correctable lesions. That MRI indicated postoperative changes at L5-S1, with no evidence of disc protrusion. However, we find no evidence that Dr. Franklin released her at that time.
In August of 1993, Dr. Cobb noted that Perrodin had chronic nerve scarring and recommended implanting a spinal cord stimulator in her back. This procedure was performed in March of 1994, with a second surgery two weeks later to reposition one of the leads. In April of 1994, Dr. Cobb informed her that she had exhausted all conservative options for treatment. He also recommended a psychological consultation for depression. He believed at that time that Perrodin could work as a teacher's aide, with such duties as assisting with academic instruction, grading homework and tests, operating a copy machine, and accompanying students to the lunchroom. He indicated that she reached maximum medical improvement in June of 1994. In September of 1994, she returned to Dr. Cobb, complaining of severe pain everywhere. He indicated that he had no solutions for her medical problems and discharged her from his care.
In February of 1994, Perrodin underwent a functional capacity evaluation at Lourdes Rehabilitation Center. The therapist recommended that the evaluation be repeated because of Perrodin's "submaximal effort."
Dr. Cobb referred Perrodin to Dr. Jimmie Cole, a psychologist, on June 28, 1994. Dr. Cole found that Perrodin had an exaggerated response on all psychological testing, with pain and depression scores in the most severe range. His diagnosis was "somatoform pain disorder," with a preoccupation with pain for at least six months. He noted an obvious physical disorder and organic pathology, but he also believed that her complaints of pain were excessive and had an hysterical component. He recommended aggressive physical therapy in a work-like regimen with coping skills instruction, subject to Dr. Cobb's approval of the physical demands. In December of 1994, Dr. Fruge also strongly recommended that Perrodin enroll in a pain management clinic.
At the School Board's request, Perrodin was evaluated by Dr. Gregory Gidman, an orthopedic surgeon, on January 24, 1995. Dr. Gidman believed that she had reached maximum medical improvement with no change in symptoms for the past year. He assigned an impairment rating of 21% of the whole person and agreed with Dr. Cobb that she could work as a teacher's aide. Dr. Gidman noted that Perrodin exhibited inconsistent results in straight leg raising and knee flexion. He reviewed earlier testing, including a CT scan of April 7, 1993, that indicated postoperative changes at L5-S1, with nonunion and bony fragments present *615 there. He did not recommend any further surgery or invasive procedures.
At trial, Perrodin testified that she still suffers from pain in the lower back, right leg, and foot. On some days, the pain is so intense that she cannot get out of bed. She exhibited her right knee to the hearing officer, who noted its "obvious swelling" for the record. Perrodin offered the testimony of her husband and her sister to corroborate her complaints of pain and inability to function. Her husband testified that before the accident Perrodin actively participated in dancing, swimming, and basketball; now, she must depend on him and her sister to do most of the household chores. Her sister testified that she helped Perrodin everyday after the accident for two years with housework; now, she does so a couple of days a week.
James Prados, a supervisor with the School Board, testified that Perrodin was offered the position of teacher's aide within the restrictions set by Dr. Cobb and that the job was still available as of the date of trial. Eddie Pettus, an adjustor with F.A. Richard & Associates, testified that Perrodin's benefits were terminated in August of 1994, after Dr. Cobb had released her to light duty and she did not return to work. In March of 1995, he became aware that the salary of the teacher's aide position did not equal that of Perrodin's former job; therefore, he placed her on partial SEB based upon the difference in pay, retroactive to August of 1994.

Disability Benefits
On appeal, the School Board argues that the hearing officer's award of TTD, based solely upon Perrodin's complaints of pain, is erroneous, and that Perrodin is no longer totally disabled. Perrodin has answered the appeal, contending that she is entitled to total and permanent disability benefits.
At the time of trial, Perrodin was not engaged in any employment or self-employment. Therefore, the burden of proof for both temporary total disability under La.R.S. 23:1221(1)(c) and permanent total disability under La.R.S. 23:1221(2)(c) was as follows:
[B]y clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment,... including, but not limited, to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(Emphasis added.)
In Harris v. Langston Co., Inc., 94-1266, p. 8 (La.App. 3 Cir. 4/5/95); 653 So.2d 789, 795, writ denied, 95-1178 (La.6/23/95); 656 So.2d 1020, this court stated that "the existence of pain is not relevant to the question of temporary total disability benefits." Similarly, in Whatley v. Hartford Accident and Indemnity Co., 509 So.2d 671, 676 (La.App. 3 Cir.), writ denied, 512 So.2d 441 (La.1987), we recognized that "pain will now have no role to play at all" in permanent total disability claims.
We agree with the School Board that the hearing officer's articulated reason of disability due to pain does not support an award of either TTD or permanent total disability benefits. In reaching this erroneous conclusion, the hearing officer did not consider other issues raised by the evidence, including (1) whether Perrodin is temporarily totally disabled due to somatoform pain disorder, the mental condition diagnosed by Dr. Cole, and (2) whether Perrodin is incapable of working as a teacher's aide, the position offered to her by the School Board, solely because of substantial pain and therefore is entitled to full SEB under La.R.S. 23:1221(3)(c)(ii).
La.R.S. 23:1021(7)(c) and (d) provide that a mental injury caused by physical trauma is not compensable unless it is demonstrated by clear and convincing evidence and unless it is diagnosed by a licensed psychiatrist or psychologist whose diagnosis meets certain criteria of the American Psychiatric Association. The courts have awarded TTD based upon a finding of somatoform pain disorder, provided the diagnosis meets the above criteria and is proven by clear and convincing evidence. See Charles v. South Central Industries, 95-746 (La.App. 3 Cir. 12/6/95); 667 So.2d 1129; Howell v. Service *616 Merchandise Co., Inc., 95-79 (La.App. 3 Cir. 8/9/95); 663 So.2d 96; Gordon v. Waste Management of New Orleans, 94-1252 (La.App. 4 Cir. 12/15/94); 648 So.2d 1037, writ denied, 95-691 (La.4/28/95); 653 So.2d 595; Lannes v. Jefferson Door Co., 94-1 (La.App. 5 Cir. 5/11/94); 638 So.2d 250. Because of the possibility of symptoms being feigned in mental injury cases, the courts should exercise extreme care in determining whether an employee proved that he suffered such an injury and whether the injury is related to the accident. Jackson v. D.C. Kile, Inc., 614 So.2d 225 (La.App. 3 Cir.), writ denied, 616 So.2d 702 (La.1993). For a claimant's burden of proof regarding causation, see Fuselier v. International Maintenance Corp., 94-792 (La.App. 3 Cir. 2/1/95); 649 So.2d 1197 and Smith v. Schwegmann Giant Supermarkets, 94-367 (La.App. 5 Cir. 11/16/94); 646 So.2d 1098, writ denied, 94-3071 (La.2/9/95); 649 So.2d 423.
Although "working in pain" is no longer a factor in determining temporary or permanent total disability, the concept is still considered in the context of SEB. W. Malone and A. Johnson, 14 Louisiana Civil Law Treatise, Workers' Compensation Law and Practice, Sec. 276 (3 Ed.1994). To recover SEB, the employee must prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned at the time of the injury. La.R.S. 23:1221(3)(a). (It is undisputed that Perrodin has met this threshold inquiry.) Once the employee meets this burden, the employer must show that the employee is physically able to perform a certain job and that the job was offered to the employee or was available to the employee within the employee's or employer's reasonable geographic region. La.R.S. 23:1221(3)(c)(i). (The School Board has met this burden through the offer of the light duty teacher's aide position, as approved by Dr. Cobb.) If the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, he cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment. La.R.S. 23:1221(3)(c)(ii).
The hearing officer did not address whether Perrodin was disabled mentally or whether she was entitled to full SEB based upon substantial pain. However, the hearing officer did find that Perrodin was not capable of working because of her pain, largely due to her favorable assessment of Perrodin's and her witness' credibility.
In Thomas v. Sears, Roebuck & Co., 94-2003 (La.App. 4 Cir. 3/29/95); 653 So.2d 102, writ denied, 95-1239 (La.6/23/95); 656 So.2d 1033, the trial judge's award of TTD was also based upon an erroneous legal conclusion, and consequently, the court never reached the issue of SEB. That trial judge was also favorably impressed with the credibility of the claimant and her witnesses. However, the appellate court questioned whether those credibility determinations were sufficient to support the conclusion that the claimant proved by clear and convincing evidence that substantial pain prevented her from performing certain jobs shown available to her, when her physician did not comment on her disability as to those jobs. Rather than dismissing the claim, however, the court ordered a remand on whether the claimant was entitled to SEB, stating:
In this case the trial court reached a conclusion of entitlement to TTD which was erroneous as a matter of law. The trial court did not decide the issue of entitlement to SEB one way or the other. The record shows that defendant's rehabilitation expert did not have the benefit of all the medical evidence as he searched for and identified jobs available to plaintiff and it shows no attempt on plaintiff's part to meet her burden of showing by clear and convincing evidence that she could not perform any of the jobs offered. Because the record on this issue is incomplete and in order to provide plaintiff a fair opportunity to establish entitlement to SEB we have concluded that a remand of the case to the trial court is the just, legal and proper result in this case. C.C.P. art. 2164. Our conclusion is buttressed by the characterization in the Smith [v. Louisiana Dept. of Corrections] case [94-1305 *617 (La.2/28/94); 633 So.2d 129] of the question of entitlement to SEB as a "facts and circumstances one". The resolution of that sort of a question has to be resolved first in the trial court and should not be attempted by a appellate court on the basis of a record that is less than complete.

Id., at p. 6; 653 So.2d at 106 (emphasis added).
In the case sub judice, there is evidence of both a mental disorder and physical pain. Dr. Cobb referred Perrodin to a psychologist for depression; Dr. Fruge strongly recommended that she enroll in a pain management clinic; and Dr. Cole recommended that she enroll in a coping skills program, with aggressive physical therapy and vocational rehabilitation, as treatment for somatoform pain disorder. Although Dr. Cole found evidence of symptom exaggeration, he did not comment whether the exaggeration was conscious or unconscious. Objective findings that would support Perrodin's complaints of pain include Dr. Cobb's determination of chronic nerve scarring, Dr. Gidman's notation of nonunion and bony fragments at L5-S1 as appearing on an MRI, and the hearing officer's observation of obvious swelling in the right knee. Additionally, Perrodin's complaints of pain in the past had been found to have an organic cause: after the chymopapain injection, a protrusion at L5-S1 was still detected, requiring further surgery, and after the stimulator was in place, a second surgical procedure was necessary to insure its proper placement.
Nonetheless, the medical reports in the record do not address whether Perrodin is disabled from a properly diagnosed mental condition. There is also no lay or medical evidence as to whether Perrodin's physical pain prevents her from performing the duties of a teacher's aide. Under the rationale of Thomas that such questions are best determined by the trier of fact and considering the liberal interpretation traditionally afforded the compensation act, we find that a remand on these issues is just, legal, and proper. As permitted in Thomas, the parties may introduce whatever additional evidence they wish to offer, in accordance with the views expressed herein.

Rehabilitation Benefits
The hearing officer also awarded six months of aggressive physical therapy and vocational rehabilitation, during which time Perrodin is to receive TTD. The School Board has not specifically objected to the award of therapy and rehabilitation, but argues that the hearing officer erred in awarding TTD through a specific point in the future.
In Jim Walter Homes v. Lewis, 544 So.2d 485, 489-490 (La.App. 2 Cir.1989), the court concluded that an award of TTD for "an extra six months for rehabilitation and retraining" was inconsistent with the language of La.R.S. 23:1221(1)(a) that temporary total disability benefits shall continue "during the period of such disability."
Perhaps the hearing officer contemplated an award of TTD pursuant to the rehabilitation provisions of La.R.S. 23:1226. La.R.S. 23:1226(F) permits the employee to receive TTD while undergoing "retraining or education under a retraining program pursuant to this Section." As noted in Jim Walter Homes, these benefits are distinct from the disability benefits of La.R.S. 23:1221(1)(a).
In 1989, effective January 1, 1990, the legislature amended the rehabilitation provisions of the worker's compensation act, shifting the act's focus from education and retraining to job placement. See Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94); 630 So.2d 733. Under the prior law, the benefits of section 1226(F) were payable during a "rehabilitation program." See Thibodeaux v. Robinswood School, 93-1130 (La. App. 3 Cir. 4/6/94); 635 So.2d 585, writ denied, 94-1188 (La.6/24/94); 640 So.2d 1355. Pursuant to the 1989 amendment to section 1226(F), however, such benefits are payable during "retraining or education under a retraining program."
Although we view the physical therapy, coping skills, and rehabilitation recommended by Dr. Cole as treatment for Perrodin's pain disorder and remaining physical problems, we question whether such a program is a retraining or education program that would entitle Perrodin to an award of TTD under section 1226(F). Further, we *618 find no indication in Dr. Cole's reports that the duration of such a program would be six months, as awarded by the hearing officer. Accordingly, we find that Perrodin is entitled to the services recommended by Dr. Cole, but we remand for a determination of the program's length and whether Perrodin is entitled to benefits under La.R.S. 23:1226(F) for its duration, should the hearing officer determine that Perrodin is not temporarily totally disabled or is not in substantial pain that would prevent her from working as a teacher's aide.

Penalties and Attorney Fees
Perrodin next argues that the hearing officer erred in failing to award penalties and attorney fees for the discontinuance of all benefits on August 4, 1994, and for the untimely payment of mileage expenses. The School Board argues that its delay in the payment was due to a clerical error, which error was promptly corrected in March of 1995, when Perrodin was tendered $1,215.00, representing past due SEB calculated upon her ability to perform light duty employment. Thereafter, the School Board continued to pay weekly SEB of $34.85.
At the time of the conduct giving rise to the claim for penalties and attorney fees, La.R.S. 23:1201(E) provided for either (1) a twelve percent penalty on any unpaid compensation or medical benefits or (2) a penalty of fifty dollars per calendar day in which any compensation or medical benefits remained unpaid, not to exceed $2,000.00 in the aggregate, whichever penalty was greater, unless the employer or insurer reasonably controverted the claimant's right to the disputed amount or showed that nonpayment was due to conditions beyond their control. La. R.S. 23:1201.2 subjected the employer or insurer to the payment of reasonable attorney fees when the failure to pay any claim due within sixty days of written notice was found to be arbitrary, capricious, or without probable cause.
We agree with the hearing officer that the School Board reasonably controverted Perrodin's claim to any total disability payments, whether TTD or SEB at zero earnings base, and was not arbitrary and capricious in refusing to pay these benefits. However, we find no justification in the record for the seven month lapse in all compensation payments.
The adjustor handling the claim testified that benefits were terminated based upon a notation in his file that Perrodin could return to the same job. However, we are unable to find any medical reports that support the adjustor's conclusion. No doctor has ever released Perrodin to return to her former employment. At the time benefits were terminated, Dr. Cobb had released her to work with significant restrictions, and Dr. Franklin would have considered a release to light duty only. Although the School Board offered Perrodin employment, apparently no effort was made to determine whether she sustained a loss in earning capacity. We view this case as a failure to investigate a partial disability claim rather than as a miscalculation or clerical error. We find that Perrodin is entitled to a penalty of $2,000.00 for the untimely payment of $1,215.00 and attorney fees of $700.00 for the prosecution of this portion of her claim. Because the undisputed amount of SEB was tendered before trial, we find no additional attorney fees are owed for appellate work.
However, we find no manifest error in the hearing officer's denial of penalties and attorney fees for the handling of her mileage expense claim. The adjustor testified that he received two written mileage requests, one in August of 1994, for which he paid $781.92, and one on April 15, 1995 (approximately three weeks before trial). He also testified that some mileage expenses had been paid directly by the School Board. He explained that the second request, which apparently contained some duplication of the first request, was put in line for payment but was still outstanding on the date of trial. The hearing officer denied the claim, finding that a second payment was not yet due because sixty days had not elapsed from the time that the outstanding request was received. We find no error in this determination.

Decree
For the above reasons, the award of past and future TTD is reversed; the award of physical therapy and rehabilitation services *619 is affirmed and the case is remanded for a determination of (1) whether Perrodin is temporarily totally disabled due to somatoform pain disorder, in accordance with La. R.S. 23:1021(7)(c) and (d) and 23:1221(1)(a), or alternatively, whether Perrodin is prevented from working as a teacher's aide due to substantial pain under La.R.S. 23:1221(3)(c)(ii); (2) the duration of the program recommended by Dr. Cole; and (3) whether Perrodin is entitled to benefits under La.R.S. 23:1226(F), should the hearing officer determine that she is not mentally disabled or is not prevented from working due to substantial pain. Perrodin is awarded penalties of $2,000.00 and attorney fees of $700.00 for the seven month lapse in all compensation payments. Costs of this appeal are assessed equally to Mary Perrodin and the St. Landry School Board.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.