11WOODARD, Judge.
This appeal arises out of a suit for worker’s compensation benefits. Plaintiff, Gary Simon, appeals the judgment of the Office of Worker’s Compensation, District 4, stating he was improperly denied indemnity benefits and payment for medical expenses resulting from a work-related accident.
FACTS

1993

Plaintiff, Gary Simon, was employed as a stock clerk by Winn-Dixie Louisiana, Inc. On April 26, 1993, Simon sustained injuries to his back and neck while in the' course of his duties. The next day, he went to see Dr. Gregory Gidman, an orthopedic surgeon, with the approval of Crawford and Company, defendant’s third-party insurer. During the months following the accident, Gidman treated Simon, sending him to a physical therapist and to Dr. Laborde for diagnostic testing, including an MRI of his cervical spine and lumbar spine. On August 13, 1993, ^Gidman stated he had no anatomic explanation for Simon’s extreme pain and referred him to a neurosurgeon, Dr. DeAraujo, who performed a CAT scan of Simon’s cervical spine and recommended continual treatment under Gidman. DeAraujo stated that surgery would not be appropriate. Gidman saw Simon three more times that fall and maintained that his pain was disproportionate. Gidman stated that Simon had no surgical problem, that he could return to work and do moderate activities and that he should avoid heavy work or repetitive bending. In mid-December, Simon’s attorney, Harold Register, referred Simon to Dr. Cobb, an orthopedic surgeon. Cobb told Simon that surgery was not an option and recommended Dr. Hubbell for pain management. Gidman approved Simon returning to work as a scanner assistant as well as a grocery stocker helper.

*87
1994

On January 4,1994, Simon went to see Dr. Hubbell but instead saw Dr. Jindia, Hub-bell’s associate. Jindia, an orthopedic surgeon, recommended cervical epidural injections and physical therapy. The next day, Simon failed to keep an appointment at the Winn-Dixie in Scott, Louisiana, where he was to meet and discuss returning to work. On January 10,1994, Winn-Dixie terminated payment of Total Temporary Disability (TTD), which it had paid Simon since April 27, 1993, and began paying plaintiff Supplemental Earning Benefits (SEB). Simon failed to keep appointments during subsequent weeks with the Winn-Dixie stores in Crowley, Louisiana, and Rayne, Louisiana, saying he was unable to perform the work. Near the end of January, Jindia injected steroids into Simon’s neck. Jindia wrote Simon’s attorney a couple of weeks later and stated plaintiff could not return to work. Jindia refused to approve Register’s proposed position of grocery stocker helper, saying Simon needed treatment before he could go to work. Simon continued to see Jindia and was injected with steroids in his neck and lower back. In late April, Simon told Jindia he did not want any more injections because he felt they did not help. Simon went back to see Dr. Cobb at the end of June. Cobb recommended Dr. Hodges for a comprehensive conservative management regimen.

Js1995

On January 31, 1995, Simon chose to see Dr. George, a general practitioner. George told him he needed to start on a TENS unit. Simon complained that Winn-Dixie refused to pay for his medication. At Winn-Dixie’s request, Simon saw Dr. James McDaniel in early February. McDaniel stated that there was nothing wrong with Simon and that he was the picture of health. Furthermore, he gave Simon a complete work release. George, who also examined Simon later that month, stated that all he could recommend was to continue conservative care. Based on McDaniel’s assessment, Winn-Dixie stopped paying SEB to Simon on February 27, 1995. A month later, George reviewed Dr. McDaniel’s letter to him and stated that McDaniel had personal difficulty with Simon and that McDaniel could not give a rational opinion of what he found because of his bias against Simon. George stated he believed Simon was truly hurt and recommended another opinion. At the defense attorney’s referral, Simon saw Jimmie Cole, a clinical psychologist. Cole gave Simon nine tests and reported that, from a psychological standpoint, Simon seemed to be experiencing some pain but that he was exaggerating it as well as exaggerating his disablement. Cobb wrote Simon’s attorney in April and stated that he had read McDaniel’s letter and that he did not believe, as McDaniel did, that Simon was malingering. George saw Simon twice in May and recommended he see an orthopedist and have more diagnostic procedures. Simon was further advised to continue medications. Cobb again wrote Simon’s attorney and stated that he did not disagree with McDaniel in that he did not feel surgery was needed and that by the time McDaniel filled out his estimated functional capacity examination, Simon probably should be ready to return to work. McDaniel filled out the estimated functional capacity form on either March 1 or May 1,1995.
On June 8, 1995, Simon had a hearing at the Office of Worker’s Compensation, and the matter was taken under advisement. Simon continued to see George every three to four weeks and continued medications. On October 4, 1995, judgment was rendered in favor of Winn-Dixie. Two weeks later George stated he wanted Simon to see a pain clinic specialist.
|/TEMPORARY TOTAL DISABILITY
In his first assignment of error, Simon contends that the hearing officer erred in finding that Simon failed to prove by clear and convincing evidence that his injury continued beyond February 1994 and therefore, that Simon was not entitled to further indemnity benefits. In Rideaux v. Franklin Nursing Home, 95-240 (La.App. 3 Cir. 11/22/95), 664 So.2d 750, 753-54, writ denied, 95-3093 (La. 2/16/96), 667 So.2d 1058, we stated:
An employee seeking TTD benefits must prove by clear and convincing evidence, unaided by any presumption of disability, *88 that she is physically unable to engage in any employment or self-employment. La. R.S. 23:1221(l)(c). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence. Bundren v. Affiliated Nursing Homes, 94-808 (La.App. 3 Cir.1995), 649 So.2d 1177. An appellate court may reverse the hearing officer’s findings regarding disability only if she has committed manifest error. Bruno v. Harbert Intern., Inc., 593 So.2d 357 (La.1992). We afford the hearing officer’s findings of fact much deference, even if the hearing officer decided the matter on the basis of memoranda and medical records. Virgil v. American Guar. & Liability Ins., 507 So.2d 825 (La.1987).
“[T]he testimony of a claimant’s treating physician should ordinarily be afforded more weight than that of an examining physician. See Nugent v. Continental Cas. Co., 93-867 (La.App. 3 Cir. 3/2/94), 634 So.2d 406.” Johnson v. Temple-Inland, 95-948, p.7 (La.App. 3 Cir. 1/31/96), 670 So.2d 388, 393, writ denied, 96-544 (La. A/19/96), 671 So.2d 919.
The hearing officer found that Simon failed to prove temporary total disability by clear and convincing evidence. She took exception with the credibility of Simon’s testimony regarding his disability:
First, the court finds Simon’s testimony regarding his disability less than credible. Simon’s in court demeanor, the compilation of medical evidence suggesting that he is no longer disabled and his trial testimony all lead this court to conclude that Simon has failed to sustain the requisite burden of proof, (citations omitted).
[[Image here]]
IsThe physicians who have treated Simon since he was released by Dr. Gidman place him in a no work status merely because of his subjective complaints. To reiterate, the diagnostic tests do not support Simon’s contention that he is entitled to any further indemnity benefits. The diagnostic tests, Simon’s clinical examinations coupled with his incredulous courtroom demeanor buttresses the court’s opinion regarding his failure to sustain the burden of proof.
The hearing officer’s reliance on her finding of fact is clear error and unsubstantiated by the record as a whole. At least two treating physicians made objective medical findings, independent of Simon’s subjective complaints, which led them to believe that his medical condition was disabling to such an extent that it prohibited him from returning to work. Jindia noted probable secondary coccygeal trauma and found plaintiff unable to perform any type of work. In fact, he specifically refused to approve the position of grocery stocker helper and, as late as 1995, George agreed that Simon’s condition was disabling. George placed Simon in a no-work status in February 1995, stating Simon was truly hurt. Even Gidman’s release to moderate duty was restricted and conditional upon “no heavy lifting or repetitive bending,” and while he questioned whether Simon was suffering from the degree of pain complained of, he obviously believed that Simon was unable to fully perform. Furthermore, although Gidman remarked that he could not find an anatomical explanation for Simon’s pain, DeAraujo, to whom he referred Simon, affirmed that continued treatment by Gid-man was indicated after DeAraujo performed a CAT scan of Simon’s cervical spine. Simon’s continuing complaints of pain after his release by Gidman are well documented by his visits to various physicians. For example, Dr. Cobb believed that the pain was due to a sprain/strain and that Simon’s symptoms, physical findings and imaging were consistent. Contrary to the hearing officer’s perception, all of the physicians who had had substantial medical contact with this patient found his complaints valid and him credible.
The hearing officer apparently discounts Simon’s complaints and bases her finding, for the most part, on the testimonies of Drs. McDaniel and Cole. Simon saw Cole at the behest of defense counsel. We note that Cole, whose diagnosis of Simon was pain disorder with psychological factors and who stated that Simon was exaggerating the pain, perhaps not consciously, evaluated him psychologically, not physically, and his evaluation was based on one visit near the end of *89 March 1995. | (¡McDaniel, who stated that the patient was “the picture of health,” only examined Simon once and that was a year after Simon’s TTD had been terminated.
Based on all of the foregoing, we find that Simon sustained his burden of proving temporary total disability by clear and convincing evidence, that Winn-Dixie improperly reduced Simon’s benefits from TTD to SEB, and that, accordingly, the hearing officer committed manifest error in deciding against plaintiff on this issue.
SUPPLEMENTAL EARNINGS BENEFITS
The issue of supplemental earnings benefits is moot in light of our above decision concerning temporary total disability.
MEDICAL EXPENSES
In his second assignment of error, Simon asserts the hearing officer erred in denying him payment of medical expenses incurred for necessary medical treatment. Winn-Dix-ie refused to pay fees charged by Drs. Cobb, Jindia and George, who treated Simon during the two years following the accident. Simon was originally treated by Dr. Gidman, an orthopedic surgeon, for several months following the accident. Gidman, who was Simon’s treating physician, gave Simon a modified work release in November 1993. Simon was then seen, at his attorney’s referral, by Dr. Cobb, another orthopedic surgeon. Gid-man did not recommend Cobb. Cobb recommended Hubbell, an orthopedic surgeon and pain specialist. Simon saw Jindia, Hubbell’s associate. Jindia treated Simon for several months, becoming Simon’s treating physician. On January 1, 1995, Simon chose to see George, a general practitioner. Simon was treated by George for several months.
Simon states Cobb was not his treating physician. He further contends that Jindia was his treating physician in the field of pain management and that no prior approval was necessary. La.R.S. 23:1121 provides, in part:
B. The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker’s compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
17La.R.S. 23:1121 must be read in conjunction with the other provisions of Title 23, including Louisiana Revised Statutes 23:1203, which provides in part:
A. In every ease coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.
This article has been interpreted by this court to allow an employee to recover medical expenses for treatment by a physician incurred without seeking approval from the employer even though the employee had been examined by two other physicians in the same field. Stelly v. United Parcel Service, 600 So.2d 156 (La.App. 3d Cir.1992). The only requirement is that the hearing officer conclude the treatment is both reasonable and necessary to alleviate the claimant’s symptoms. The employer is then bound to provide for those expenses with the exception of the initial unauthorized visit. Id.
Lemoine v. Hessmer Nursing Home, 94-836, p. 18 (La.App. 3 Cir. 3/1/95), 651 So.2d 444, 454-55.
“[A]n employee is not only entitled to treatment which cures her work related injuries, but is also entitled to palliative care that relieves her pain. See Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982); Gourdon v. Rockwood Ins. Co., 368 So.2d 1156 (La.App. 3d Cir.1979).” Ferrier v. Jordache-Ditto’s, 94-1317, p. 8 (La.App. 3 Cir. 5/17/95), 662 So.2d 14, 19, writ denied, 95-2865 (La. 2/2/96), 666 So.2d 1100. La.R.S. 23:1142 states:
B. Nonemergency care. Except as provided herein, each health care provider may not incur more than a total of seven *90 hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer’s workers’ compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
[[Image here]]
(2) Fees for those services of the health care provider held not to have been of an emergency nature shall not be an enforceable obligation Igagainst the employee or the employer or the employer’s workers’ compensation insurer unless the employee and the payor have agreed upon the treatment or diagnostic testing by the health care provider, except as provided in R.S. 23:1272(D).
Without the approval of Winn-Dixie, Simon consulted Cobb, Jindia and George for relief of his pain. Winn-Dixie refused to pay for treatment from these doctors, believing it was not necessary medical treatment. The hearing officer agreed with Winn-Dixie, stating ample medical evidence existed to show Simon’s injury had resolved by the time the bills were incurred.
Simon was examined by two orthopedic surgeons of his choice after having seen Gidman, an orthopedic surgeon as well. La. R.S. 23:1121(B) provides that an employee has the right to select one treating physician in any field or specialty. However, prior consent must be obtained from the employer or the worker’s compensation carrier for a change of treating physician within that same field or specialty. Id. An issue exists as to whether Jindia, who Simon states was his treating physician, was in the same or in a different field from Gidman. As previously stated, both were orthopedic surgeons. However, Jindia was consulted as a pain specialist while Gidman was not referred to as such. Furthermore, even if Jindia is considered within the same field or specialty, Simon’s treatments from Jindia, which were medically necessary because of Simon’s disabling pain, should have been paid for by Winn-Dixie. Lemoine, 651 So.2d 444. Jin-dia’s steroid injections were medically necessary despite their ultimate inability to relieve Simon’s pain.
The hearing officer improperly concluded Simon was not entitled to further medical treatment. Simon’s initial visits to Cobb and Jindia were made without Winn-Dixie’s consent, and therefore, Simon is responsible for those payments. La.R.S. 23:1203. However, Simon established the reasonableness and necessity for further treatment from those doctors. Therefore, Winn-Dixie is liable for charges resulting from Simon’s medical treatment with Jindia and Cobb. Stelly v. United Parcel Service, 600 So.2d 156 (La.App. 3 Cir.1992).
Turning to Simon’s request that Winn-Dixie pay for his visits to Dr. George, we initially note that George is a general physician and the first general practitioner Simon saw. He saw Simon in 1995 and treated him on a regular basis for several months. Simon has proved he was in disabling pain during 1995, pain for which he was seeking relief. That George eventually recommended Simon see the same type ¡ gof specialists Simon had seen previously does not negate the fact that Simon needed medical treatment, that he was not able to get sufficient results from his prior physicians, and that he consulted a general physician hoping he might have some alternative suggestions for treatment. We therefore conclude the visits to George were medically necessary and find defendant responsible for payment for those visits.
CONCLUSION
A review of the entire record in this case supports our finding that Simon was entitled to continuing TTD benefits and reimbursement of medical expenses for the indicated visits with Drs. Jindia, Cobb, and George. The overwhelming medical evidence and opinion indicate that he was unable to return *91 to his former job or to a similar one at a more moderate level.
For the reasons stated in this opinion, we reverse the judgment of the administrative hearing officer and find the defendant-appel-lee, Winn-Dixie Louisiana, Inc., liable for TTD benefits to plaintiff-appellant, Gary M. Simon, from January 10, 1994. We further find defendant-appellee responsible for payment of Simon’s treatment with Drs. Jindia and Cobb, excepting the initial visit, and payment for treatment with George.
REVERSED AND RENDERED.
SULLIVAN, J., concurs.