l iWOODARD, Judge.
Plaintiff appealed a decision of the Office of Workers’ Compensation which found that he was improperly denied indemnity benefits and payment for medical expenses resulting from a work-related accident. This court reversed that decision and awarded plaintiff temporary total disability (TTD) benefits. Defendant appealed to the Louisiana Su *714 preme Court, which reversed this court’s award of TTD benefits and remanded for a determination of whether plaintiff was entitled to supplemental earnings benefits (SEB). We affirm the hearing officer’s determination that plaintiff is not entitled to SEB.
FACTS

1993

Plaintiff, Gary Simon, was employed as a stock clerk by Winn-Dixie Louisiana, Inc. On April 26, 1993, Simon sustained injuries to his back and neckUwhile in the course of his duties. The next day, he went to see Dr. Gregory Gidman, an orthopedic surgeon, with the approval of Crawford and Company, defendant’s third-party insurer. During the months following the accident, Gidman treated Simon, sending him to a physical therapist and to Dr. J.J. Laborde for diagnostic testing, including an MRI of his cervical spine and lumbar spine. On August 13, 1993, Gid-man stated he had no anatomic explanation for Simon’s extreme pain and referred him to a neurosurgeon, Dr. Luiz DeAraujo, who performed a CAT scan of Simon’s cervical spine and recommended continual treatment under Gidman. DeAraujo stated that surgery would not be appropriate. Gidman saw Simon three more times that fall and maintained that his pain was disproportionate. Gidman stated that Simon had no surgical problem, that he could return to work and do moderate activities and that he should avoid heavy work or repetitive bending. In mid-December, Simon’s attorney, Harold Register, referred Simon to Dr. John Cobb, an orthopedic surgeon. Cobb told Simon that surgery was not an option and recommended Dr. Hubbell for pain management. Gidman approved Simon returning to work as a scanner assistant as well as a grocery stacker helper.

1994

On January 4,1994, Simon went to see Dr. Hubbell but instead saw Dr. Sandiv Jindia, Hubbell’s associate. Jindia, an orthopedic surgeon, recommended cervical epidural injections and physical therapy. The next day, Simon failed to keep an appointment at the Winn-Dixie in Scott, Louisiana, where he was to meet and discuss returning to work. On January 10,1994, Winn-Dixie terminated payment of Total Temporary Disability (TTD), which it had paid Simon since April 27, 1993, and began paying plaintiff Supplemental Earnings Benefits (SEB). Simon failed to keep appointments during subsequent weeks with the Winn-Dixie stores in Crowley, Louisiana, and Rayne, Louisiana, saying he was unable to perform the work. Near the end of January, Jindia injected steroids into Simon’s neck. Jindia wrote Simon’s attorney a couple of weeks later and stated plaintiff could not return to work. Jindia refused to approve Register’s proposed position of grocery stacker helper, saying Simon needed treatment before he could go to work. Simon continued to see Jindia and was injected with steroids in his neck and lower back. In late April, Simon told 13Jindia he did not want any more injections because he felt they did not help. Simon went back to see Dr. Cobb at the end of June. Cobb recommended Dr. Hodges for a comprehensive conservative management regimen.

1995

On January 31, 1995, Simon chose to see Dr. Joseph George, a general practitioner. George told him he needed to start on a TENS unit. Simon complained that Winn-Dixie refused to pay for his medication. At Winn-Dixie’s request, Simon saw Dr. James McDaniel in early February. McDaniel stated that there was nothing wrong with Simon and that he was the picture of health. Furthermore, he gave Simon a complete work release. George, who also examined Simon later that month, stated that all he could recommend was to continue conservative care. Based on McDaniel’s assessment, Winn-Dixie stopped paying SEB to Simon on February 27, 1995. A month later, George reviewed Dr. McDaniel’s letter to him and stated that McDaniel had personal difficulty with Simon and that McDaniel could not give a rational opinion of what he found because of his bias against Simon. George stated he believed Simon was truly hurt and recommended another opinion. At the defense attorney’s referral, Simon saw Jimmie Cole, a clinical psychologist. Cole gave Simon nine *715 tests and reported that, from a psychological standpoint, Simon seemed to be experiencing some pain but that he was exaggerating it as well as exaggerating his disablement. Cobb wrote Simon’s attorney in April and stated that he had read McDaniel’s letter and that he did not believe, as McDaniel did, that Simon was malingering. George saw Simon twice in May and recommended he see an orthopedist and have more diagnostic procedures. Simon was farther advised to continue medications. Cobb again wrote Simon’s attorney and stated that he did not disagree with McDaniel in that he did not feel surgery was needed and that by the time McDaniel filled out his estimated functional capacity examination, Simon probably should be ready to return to work. McDaniel filled out the estimated functional capacity form on either March 1 or May 1,1995.
On June 8, 1995, Simon had a hearing at the Office of Worker’s Compensation, and the matter was taken under advisement. Simon continued to see George every three to four weeks and continued medications. On October 4, 1995, judgment was [¿rendered in favor of Winn-Dixie, and Simon appealed. This court reversed the hearing officer and held that Winn-Dixie improperly reduced Simon’s benefits from TTD to SEB. Accordingly, this court awarded Simon TTD benefits from January 10, 1994; payment of Simon’s treatment with Drs. Jincha and Cobb, excepting the initial visit; and payment for treatment with George. Simon v. Winn-Dixie Louisiana, Inc., 96-1635 (La.App. 3 Cir. 8/7/96), 678 So.2d 85, (Simon I). Winn-Dixie appealed this decision and was granted a writ of certiorari in which the supreme court reversed this court’s decision in Simon I, relating to the TTD award, and remanded for a consideration of SEB benefits.
SUPPLEMENTAL EARNINGS BENEFITS
In Simon I, this court held that Simon had proven, by clear and convincing evidence, a temporary total disability resulting from his injury. Id. Because the supreme court has reversed that decision, finding that Simon had not proven temporary total disability, we must determine whether Simon has proven that he is entitled to supplemental earnings benefits.
La.R.S. 23:1221(3)(a) states in pertinent part:
For injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at the time of injury ... whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis.
In determining whether a claimant is entitled to SEB, the threshold inquiry is whether the employee has proven, by a preponderance of the evidence, that he or she is unable to earn wages equal to 90% or more of the wages he or she earned at the time of the injury. Smith v. Louisiana Dep’t of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129.
While the standard of proof for TTD and SEB are similar, Winn-Dixie errs in asserting that the proof required is the same for both issues. For example, although “working in pain” is no longer a factor in determining TTD, the concept is still considered in the context of SEB. Perrodin v. St. Landry Parish Sch. Bd., 95-1563 5(La.App. 3 Cir. 5/22/96), 676 So.2d 612. Before any evidence of “substantial pain” may be introduced, however, the claimant must first establish that he is unable to earn at least 90% of his pre-injury wages. Id. In the case sub judice, Simon did not present any evidence that his injuries have prevented him from earning less than 90% of his pre-injury wages, or that he has even sought employment. Simon did present evidence that he was unable to work at any job, due to his temporary total disability. Simon argues that this evidence may now be used to support a finding of eligibility for SEB benefits, asserting that an individual who is totally temporarily disabled is, by definition, unable to earn at least 90% of his pre-injury wages.
The hearing officer, however, weighing Simon’s courtroom demeanor and the evidence presented did not find Simon’s complaints of *716 pain credible. Because the supreme court has already ruled that the hearing officer’s findings regarding denial of TTD were not erroneous, we cannot now say that those same findings, without more, support an award of SEB. For these reasons, the decision of the hearing officer denying SEB is not manifestly erroneous, and this assignment has no merit.
CONCLUSION
For the above stated reasons, the decision of the hearing officer is affirmed. All cost are assessed to the plaintiff, Gary Simon.
AFFIRMED.