643 So.2d 460 (1994)
Mark GAGNARD, Plaintiff-Appellee,
v.
VENTURE MARKETING CORP., Defendant-Appellant.
No. 93-1655.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
*461 John Taylor Bennett, Marksville, for Mark Gagnard.
Christopher Richard Philipp, Lafayette, for Venture Marketing Corp.
Before GUIDRY, C.J., and DECUIR and PETERS, JJ.
PETERS, Judge.
This is a workers' compensation case. Mark Gagnard sustained an injury while in the course and scope of his employment with Venture Marketing Corporation. The employer initially paid benefits but later terminated them claiming Gagnard had furnished false information concerning his earnings and condition. After trial, the hearing officer awarded benefits, penalties and attorney fees. The employer appeals this judgment.

FACTS
On August 29, 1990, Gagnard sustained a lower back injury while in the course and scope of his employment with Venture. He was paid all benefits due through April 13, 1992.
Sometime prior to the date benefits were terminated, Venture received information that Gagnard was selling crossties. Venture, through a third party administrator for a self-insurance fund with which Venture was associated, employed Larry Zerangue, a private investigator, to determine if the information was accurate. Zerangue contacted Gagnard by telephone and entered into an agreement to purchase crossties. Part of the agreement required that the crossties be delivered to a site specified by Zerangue.
According to Gagnard, the crossties actually belonged to his father-in-law, Kent Norman, and were located on Norman's property. Zerangue first contacted Gagnard by telephone at Gagnard's home. Norman was present at the time and, according to Gagnard, agreed to sell the crossties. Gagnard also testified that Norman and his son loaded the crossties, which were apparently located in Avoyelles Parish, on a trailer and he and Norman then transported them, using Gagnard's truck. They met Zerangue en route and followed him to the unloading site in St. Landry Parish. This testimony was substantiated by that of Norman. Unknown to Gagnard, Phillip Moory, a fraud investigator for the self-insurance fund, was hidden at the unloading site and videoed a portion of the process.
Gagnard contends that in the initial telephone conversation he told Zerangue to supply the labor to unload the crossties. Zerangue is unclear on this portion of the conversation. However, he did testify that Gagnard advised him at the unloading site that someone was supposed to be present to help unload the crossties and that Gagnard could not unload them because of his back condition. Zerangue testified he told Gagnard that if they could not unload the crossties he would have to take them back.
According to Gagnard and Norman, Norman began unloading the crossties by himself, and after a number were unloaded, Gagnard began to assist. According to Gagnard, he did this because he did not want Norman to injure his back.
Moory videoed Norman and Gagnard unloading seven of the twenty-four crossties. Gagnard would lift one end and Norman the other to throw the crosstie off the trailer. This process took no more than fifteen minutes. Zerangue then gave Gagnard $288.00 for the crossties. However, both Norman and Gagnard testified that Gagnard gave the money to Norman who paid Gagnard $60.00 for the use of his vehicle.
The delivery occurred on January 11, 1992. In his January report of monthly earnings (commonly referred to as an S.E.B. report), Gagnard reported no earned wages during January, 1992. On March 19, 1992, Gagnard testified by deposition that he had not worked and the heaviest thing he lifted *462 around the house was a gallon of milk. Based upon the investigation, the January S.E.B. report, and the deposition, the employer terminated Gagnard's benefits on April 13, 1992.
After trial, the hearing officer concluded that there was no significant, material misrepresentation made by Gagnard for the purpose of obtaining workers' compensation benefits.

OPINION

Termination of Benefits
At the time of Gagnard's injury, Louisiana Revised Statutes 23:1208 provided:
"If, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, any person, either for himself or any other person, wilfully makes a false statement or representation, he shall be fined not more than five hundred dollars or imprisoned for not more than twelve months, or both. Any employee violating this Section shall in addition forfeit any right to compensation benefits under this Chapter."
(Emphasis added.)
Venture relied on this statute to terminate benefits.
In a workers' compensation case the appellate court's review is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 630 So.2d 733 (La.1994).
The employer's only evidence of wilful, false statements or misrepresentations was the testimony of Zerangue and Moory and the video. While the video creates an inference, standing alone it does not contradict the testimony of Gagnard and Norman that the crossties were Norman's property, that Zerangue and Norman made a deal through Gagnard, that Gagnard gave the money paid him to Norman, and that Norman paid only Gagnard's expenses. The hearing officer accepted the testimony of Gagnard and Norman in finding that Gagnard was not in the business of selling crossties and that he only meant to provide the use of his truck. We cannot say the hearing officer was clearly wrong in reaching the conclusion that Gagnard only received money to cover expenses.
Even though Gagnard did help lift some of the crossties, the hearing officer concluded he did not lift them without help and he complained of pain while performing this activity. The hearing officer also noted that this activity appeared to be unusual. In fact, the employer intentionally created a situation which left him no choice but to either assist or cause his father-in-law to unload by himself or lose a sale. The video substantiates Gagnard's testimony that he was not able to work without resting and he took breaks to relieve pressure on his back. In the video, Gagnard leaned against the truck twice and the trailer once, apparently in an attempt to relieve pressure on his lower back. Based on the circumstances and the unusual activity, the hearing officer concluded Gagnard did not misrepresent his lifting ability. Again, we do not find the hearing officer's findings in this regard to be clearly wrong.
The employer further argues that, in light of Gagnard having unloaded the crossties, his later deposition testimony is false. At his deposition on March 19, 1992, Gagnard responded as follows:
"Q Okay, All right. How about lifting? What is the most you can lift around the house without causing any discomfort to yourself?
A I really haven't tried to lift anything heavy. Ithe heaviest thing I lift around the house is a gallon of milk or....
* * * * * *
Q Okay, so we are talking about the physical activities you can do now. The only thing you have tried to lift is something like a gallon of milk.
A Right."
Technically Gagnard's answers do not appear to be false in the context of the questions. While the latter question does not specifically refer to lifting "around the house," it appears to be in the context of the first question. Again, this court cannot conclude the hearing officer was clearly wrong in her findings.

*463 Penalties and Attorney Fees
The employer also appeals the award of penalties and attorney fees. Any employer or insurer who at any time discontinues payments of claims properly made, when such discontinuance is found to be arbitrary, capricious, or without probable cause, subjects the employer or insurer to payment of all reasonable attorney fees for the prosecution and collection of such claims. Louisiana Revised Statutes 23:1201.2; Hopes v. Domtar Industries, 627 So.2d 676 (La.App. 3d Cir. 1993). Additionally, penalties shall be assessed unless the employee's right to benefits has been reasonably controverted by the employer or his insurer. Louisiana Revised Statutes 23:1201; Hopes, supra.
Statutes imposing liability for penalties and attorney fees are penal in nature and must be strictly construed to prevent an employer from being penalized for relying in good faith on valid defenses. Lewis v. Malone & Hyde, Inc., 626 So.2d 531 (La.App. 3d Cir.1993). In this case, the hearing officer concluded that Venture was arbitrary, capricious, and without probable cause in terminating benefits and the issue of termination of benefits had not been reasonably controverted. Applying the manifest error or clearly wrong standard of Freeman, supra, we cannot conclude that the hearing officer was clearly wrong in her findings in this regard. Venture relied on one incident and nothing else. No effort was even made to determine if the crossties belonged to Gagnard or his father-in-law. Additionally, no current medical evaluation was obtained. The incident as described in testimony and by video, and by deposition testimony as taken in context, substantiates the hearing officer's determination. Therefore, we affirm the award of penalties and attorney fees.

DISPOSITION
For the foregoing reasons, we affirm the judgment appealed at Venture's cost.
AFFIRMED.