| LAUNDERS, Judge.
This case arises from a Workers’ Compensation claim wherein an employee, Karen D. Ricaud (hereinafter “Plaintiff’), of Holloway Sportswear (hereinafter “Defendant”) seeks compensation for injuries to her right arm allegedly sustained through repetitive motions performed during the course of her job. Plaintiff saw a series of doctors and made an unsuccessful attempt at returning to work. Plaintiff filed a “Disputed Claim for Compensation” form seeking resolution of the following:
Extent and duration of disability; nonpayment or incorrect payment of disability benefits; failure to provide authorization for medical treatment; non-payment or untimely payment of medical and travel related expenses; failure to furnish reports of treating physicians; failure to provide vocational rehabilitation; employer’s failure to furnish plaintiff with copy of medical report within 30 days; penalties and attorney’s fees.
After a trial, the hearing officer found: Plaintiff was injured by way of accident during the course and scope of her employment for Defendant; her average weekly wage at the time of injury was $226.74; Defendant was credited maintenance of | ¡¿Plaintiffs fringe benefits of $28.74 per week (plus an additional $10.00 per week to maintain her health insurance from the date of the accident through September 30, 1997); Plaintiff was entitled to $125.40 per week disability benefits from date of accident to the end of Plaintiffs temporary total disability (TTD), February. 11, 1997; as of February 12, 1997, Plaintiff became entitled to benefits per La.R.S. 23:1221(3), subject to the employers credit for fringe benefits, through September 30,-1997; all supplemental earnings benefits (SEB) between February 12, 1997 through February 13, 1998 shall be reduced by 50%; claimant’s choice of orthopaedists were Doctors Genoff and Porubsky only, Plaintiff saw Dr.s’ Brunet and Weisberg at her own initiative and expense; the ultimate treatment recommended by Doctors Brunet and Weisberg, being performed by Dr. Firmin at the time of trial, is reasonable and necessary hence Defendant is liable for costs; claimant is entitled to one follow-up with Dr. Weisberg for which Defendant is liable; Dr. Firmin is Plaintiffs choice of anesthesiologist/pain specialist; Defendant is liable for mileage except for the initial visits with Doctors Brunet and Weisberg; Defendant' is liable for Dr. Po’s $45.00 bill evaluating Plaintiff on February 24, 1997; Plaintiffs claim for attorney fees is denied; Defendant must pay all costs of proceedings, to wit: Plaintiffs filing fee, Doctors Firmin’s and Po’s expert witness fees, medical records certification costs and court reporter’s fee for Dr. Porubsky’s deposition; interest on any compensation to run from date of judgment, per La.R.S. 23:1201.3(A).
We amend the judgment and re-calculate the compensation benefits owed Plaintiff; we reverse the hearing officer’s denial of penalties and attorney fees under La. R.S. 23:1201 and we now assess the same against Defendant for late and incorrect compensation payments; we also reverse the judgment disallowing Plaintiff follow up treatment with Doctors Brunet, Weis-berg and Fermín as necessary. The remainder of the judgment is affirmed.
| .FACTS
Plaintiff began her employment with Defendant on December 10, 1993, working as a final inspector at the Holloway plant in Simmsport, Louisiana at a rate of $4.95 per hour with an average weekly salary of $226.74. Plaintiff received various fringe benefits, costing Defendant $28.74 per week. Defendant also maintained Plaintiffs health insurance for an additional $10.00 per week from the date of the accident until September 30,1997.
On March 27, 1996, Plaintiff reported an injury to her right arm stemming from the repetitive motions involved in performing *128 her job. Plaintiff saw a series of doctors including her family doctor and more than six specialists. After an elaborate series of evaluations, referrals and self-initiated visits, Plaintiff attempted to return to work in a modified position that would minimize the use of her left arm. This position was described by Defendant and approved by Plaintiffs specialist. Meanwhile, Plaintiffs attorney revoked her medical release authorization as to Defendant’s Vocational Rehabilitation Counselor on February 12, 1997. When Plaintiff returned on February 12, 1997, to work in a “modified cuff position,” she could not perform the task and was sent home. Plaintiff never again returned to work.
Objective tests were administered to Plaintiff by the several doctors she visited including: "a neurological examination, EMG/NCV, conducted by Dr. Riad Haj Murad, a Dexter Hand Evaluation at St. Francis Cabrini Hospital requested by Dr. Robert Po and a Functional Capacity Evaluation authorized by Dr. Gary Porub-sky. Plaintiff ignored much of the recommended treatments until she finally, at the time of trial, began receiving, not the stellate ganglion blocks recommended by previous doctors (which she refused), but regional sympathetic blocks under the recommendation of yet another specialist, Dr. Melanie Fermín.
On May 8, 1996, Plaintiff first received temporary total disability benefits at |4a rate of $119.46 per week, and she received back payments for benefits owed. On May 29, 1996, Plaintiffs benefits were corrected to $130.76 per week and she received a single payment of $101.70, to cover the difference between the corrected and the old rate. These benefits were terminated on February 12,1997.
On February 13, 1997, Plaintiff brought suit over her disputed claim for compensation benefits for injuries she allegedly sustained — particularly, injuries to her right arm involving pain and discoloration. Trial was held on August 26, 1997, and on December 12, 1997, written reasons for judgment were filed. On March 17, 1998, additional reasons were issued.
LAW AND ANALYSIS
“It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong,’ and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989), reh’g denied, 561 So.2d 105 (La. 5/11/90), citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716, (La.1973). The role of an appellate court is not to review factual issues de novo. Id. Virgil v. American Guarantee and Liability Insurance, 507 So.2d 825, 826 (La.1987), on remand, 512 So.2d 1235 (La.App. 5 Cir. 1987), remanded, 514 So.2d 1169 (La.1987), on remand, 520 So.2d 1259 (La.App. 5 Cir.1988), writ denied, 522 So.2d 569 (La.1988), explains:
Louisiana’s three-tiered court system allocates the fact finding function to the trial courts. Because of that allocation of function (as well as the trial court’s normal procedure of evaluating live witnesses), great deference is accorded to the trial court’s factual findings, both express and implicit, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court’s judgment.
IrI. Assignment of Error No. 1
In the first of Plaintiffs seven assignments of error, she argues that the lower court erred in finding that Plaintiff refused to cooperate with Defendant’s vocational rehabilitation efforts and so erred when it reduced Plaintiffs SEB from February 12, 1997, through February 13, 1998, by 50%. The trial judge concluded that *129 when Defendant terminated her benefits on February 12, 1997, Defendant had good reason to believe that Plaintiff was not making a good faith effort to return to work. The trial judge expressly stated that he found Defendant’s witnesses, supervisors and rehabilitation experts to be credible and that they genuinely intended to either offer a lighter duty job or if not, would have reinstated her indemnity benefits. When findings are based on determinations regarding the credibility of witnesses, the manifest error, clearly wrong, standard demands great deference to the trier of fact’s findings; only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Id. at 826. The trial judge found, as do we, that Plaintiff did not put forth a genuine effort to perform a modified job. The lower court also noted testimony and objective evidence, including Dr. Genoffs report and the Dexter Hand and Functional Capacity evaluations, which indicated Plaintiff was engaging in symptom magnification. Of particular interest are the Additional Written Reasons for Judgment rendered by the trial judge in which he explained:
In the February 10, 1997, letter to Ms. Frederick (rehabilitation specialist), claimant’s counsel did not offer (as would be the accepted practice) to have himself or claimant present when Ms. Frederick was to meet with the physicians or for her and claimant to share records; he simply demanded that she not meet with claimant’s doctors or review their medical records on claimant.
Additionally, the trial judge emphasized that Plaintiffs attorney did not at any time mention Dr. Po’s note that stated claimant could not work and that the one-lined | fiquery posed doctors Brunet and Weis-berg, which failed to ask whether Plaintiff could perform a lighter duty job, was indicative of Plaintiffs lack of interest in returning to work in any capacity. La. R.S. 23:1226(E) provides in pertinent part, “Refusal to accept rehabilitation as deemed necessary by the workers’ compensation judge shall result in a fifty percent reduction in weekly compensation, including supplemental earnings benefits pursuant to R.S. 23:1221(3), for each week of the period of refusal.” We note the Banks decision wherein the Supreme Court explained in applying the 50% reduction of La.R.S. 23:1226(E) that an arbitrary refusal of rehabilitative services by an employee cannot inure to his benefit. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.1997); 696 So.2d 551.
Upon review of the record, we find evidence upon which reasonable factfinder’s could disagree regarding Plaintiffs efforts to cooperate. We emphasize that reducing an injured worker’s benefits by 50% is a harsh penalty that must be rendered only in the most extreme and clearly proven circumstances. In the present matter, we acknowledge the subjective nature of the life changes that Plaintiffs injuries necessarily bring. Nevertheless, in light of the absolute and unequivocal refusal to give authority to Defendant’s vocational rehabilitation counselor, we feel that such conduct rises to the egregious level of behavior needed to justify the application of the La.R.S. 23:1226(E) penalty. Accordingly, we find the trial judge’s reduction of Plaintiffs benefits for the aforementioned time period to be without manifest error.
II. Plaintiff’s Assignment of Error No. Defendant’s Assignment No. S
Plaintiff asserts that the hearing officer erred in crediting Defendant $10.00 per week for Defendant’s payment of Plaintiffs portion of the cost of the group health insurance against its obligation to pay disability benefits from date of injury through September 30, 1997. Guiding the lower court’s and our analysis, La.R.S. 23:120617provides,
Any voluntary payment or unearned wages paid by the employer or insurer either in money or otherwise, to the *130 employee or dependent, and accepted by the employee, which were not due and payable when made, may be deducted from the payments to be made as compensation.
Hence, Defendant is to be credited for all such payments made.
Donna Glaviano, office manager of Defendant, gave testimony and recounted a conversation that she had with Plaintiff wherein Plaintiff acknowledged both that her medical insurance was continuing and that she understood that workers’ compensation was paying the ten dollars a week that she ordinarily paid. Keeping in mind the objectives of La.R.S. 23:1226 in not granting duplicative wage-loss benefits to employees, the lower court analyzed the $10.00 adjustment by offsetting the additional $10.00 Defendant paid from Plaintiffs average weekly wage minus fringe benefits to calculate $226.74 — $28.74 (fringe benefits) = $198.00 less the $10.00 offset to arrive at an amount of $188.00. We find this calculation method to be incorrect and we agree with Defendant’s suggested calculations, as asserted in its Assignments of Error. Plaintiffs average weekly wage was clearly $226.74, including her weekly salary of $198.00 plus $28.74 in fringe benefits. To determine Defendant’s obligation of TTD for the time period, March 27, 1996, through February 11, 1997, during which Defendant maintained her fringe benefits and paid an additional $10.00 per week for her health insurance is as follows: $226.74 x .667 = $151.24, reduced by $38.74 for benefits paid for an amount owed per week of $112.50. Accordingly, Defendant, who paid Plaintiff compensation of $130.76 per week through February 11, 1997, overpaid Plaintiff $18.26 each payment and is due a credit under La.R.S. 23:1206 for each week of overpayment.
Finally, regarding the acceptance required by La.R.S. 23:1206, we find it clearly reasonable, as found by the trial judge and indicated by the record, that | ¡¿Plaintiff knew of, and hence tacitly accepted, the benefit of Defendant’s maintenance of her health insurance when, after her accident, she took advantage of her general health insurance benefits. We find no manifest error in this application of La.R.S. 23:1206 to offset Defendant’s $10.00 per week payments maintaining Plaintiffs health insurance; we affirm the lower court’s analysis.
III. Assignment of Error No. S
Plaintiff claims that the trial judge’s refusal to order reimbursement for expenses she incurred by seeing doctors Brunet and Weisberg is manifestly erroneous and that the judge erred when he limited reimbursement to Plaintiff for only one visit to Dr. Weisberg after trial. We find, as did the trial court, that Plaintiff clearly sought, on her own volition and without any referrals, the services of these additional doctors as contemplated by La. R.S. 23:1121(D) which provides:
After all examinations have been conducted but prior to any order directing the injured employee to return to work, the employee shall be permitted, at his own expense, to consult with and be examined by a physician of his own choosing. Such report shall be considered in addition to all other medical reports in determining the injured employee’s fitness to return to work. Should disagreement exist, after such consultation and examination, as to the fitness of the employee to return to work, the provisions of La.R.S. 23:1223 shall be followed.
The evidence reveals that Plaintiff saw each of these doctors once only after seeing a multitude of specialists. The only information that she sought from the two doctors at issue was apparently an evaluation of her condition and not treatment. As mentioned above, Plaintiffs counsel secured from doctors Brunet and Weisberg, in response to a one line question, to wit; whether Plaintiff is temporarily totally disabled, a ‘yes’ answer that the lower court felt inadequate to be given much weight. In determining whether Plaintiff indeed *131 saw these doctors in preparation for trial, it is important to note that she did not receive treatment from either of the doctors. Defendant cites ample jurisprudence providing that La.R.S. 23:1203 does not provide 19compensation for evaluations sought solely for purposes of litigation. This court in Lemoine v. Hessmer Nursing Home, 94-836, p. 18 (La.App. 3 Cir. 3/1/95), 651 So.2d 444; 651 So.2d 444, 454, 455, appeal after remand, 97-586 (La.App. 3 Cir. 10/22/97); 702 So.2d 951, explained in detail:
Louisiana Revised Statutes 23:1121 must be read in conjunction with the other provisions of Title 23, including Louisiana Revised Statutes 23:1203, which provides in part that:
A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. (emphasis added).
This article has been interpreted by this court to allow an employee to recover medical expenses for treatment by a physician incurred without seeking approval from the employer even though the employee had been examined by two other physicians in the same field. Stelly v. United Parcel Service, 600 So.2d 156 (La.App. 3d Cir.1992). The only requirement is that the hearing officer conclude the treatment is both reasonable and necessary to alleviate the claimant’s symptoms. The employer is then bound to provide for those expenses with the exception of the initial unauthorized visit. Id.
In the present matter, the trial judge granted to Plaintiff reimbursement for further treatment by doctors Brunet and Weisberg but denied the initial unauthorized visits which were never reviewed and thus not deemed necessary by the hearing officer. Plaintiffs failure to seek the hearing officer’s approval that additional treatment was both reasonable and necessary precludes Defendant’s liability for that initial visit. In light of the evidence and jurisprudence, we agree with the trial court’s finding and affirm the denial of compensation for her initial, unauthorized visits. However, as the hearing officer explained, since “the treatment recommended by Drs. Brunet and Weisberg and administered by Dr. Fermín is found to be necessary and reasonable ...,” we reverse the lower court’s rule limiting Plaintiff to only one follow up visit. We deem these doctors to be Plaintiffs treating physicians, and we hold, in light of Lemoine, Defendant liable for all expenses connected with Plaintiffs Revaluation and treatment.
IV. Assignment of Error No. U, 5 and 6
Plaintiff asserts that the lower court erred when it refused to impose penalties and attorney fees for non-payment of Plaintiffs medical. expenses of Plaintiffs treating physician, for the untimely and incorrect payment of disability benefits, both pursuant to La.R.S. 23:1201, and when it refused to impose sanctions under La.R.S. 23:1201.2 for Defendant’s arbitrary termination of disability benefits and/or discontinuance of medical treatment.
Regarding the claim for penalties and attorney’s fees for untimely and incorrect payment of disability benefits, we disagree with the lower court’s reasoning that none are due Plaintiff. Defendant knew of Plaintiffs injury on’March 27, 1996, yet did not make a first payment until May 8, 1996. Despite Defendant’s act to remedy its calculation error and reimbursement to Plaintiff shortly after its initial payment, we find that Defendant clearly violated La.R.S. 23:1201 A which provides:
Payments of compensation under this Chapter shall be paid as near as may be possible, at the same and place as wages were payable to the employee before the *132 accident; however, when the employee is not living at the place where the wages were paid, or is absent therefrom, such payments shall be made by mail, upon the employee giving to the employer a sufficient mailing address. However, a longer interval, not to exceed one month, may be substituted by agreement without approval of the director. An interval of more than one month must be approved by the director.
As we noted above, the “[j]urisprudence clearly establishes that in workers’ compensation cases, the appropriate standard of review to be applied by appellate courts is the ‘manifest error — clearly wrong’ standard.” Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706. Pursuant to La.R.S. 23:1201 F(2) which provides an exception to Section A if “the claim is reasonably controverted,” this court has noted, “[i]n reviewing the award for statutory penalties ... ,we recognize that a worker’s compensation judge is given great discretion in determining that 11 penalties are due.” Rideaux v. St. Landry Parish School Board, 97-1616, p. 12 (La.App. 3 Cir. 4/8/98); 711 So.2d 819, 826. In the present matter, the trial court explained: “Given the nature of the accident and the contemporaneous medical opinions, defendant had no justification for this delay, nor any justification for initially paying the incorrect rate.” The trial judge, however, refused to assess penalties, using Woodard v. Gregory & Cook, Inc., 476 So.2d 575 (La.App. 3 Cir.1985) as his guide. After a review of the Woodard decision, we agree with Plaintiff that it is inapplicable to the present issue. Rather, the appropriate guide is the recent decision of Brown v. Texas-LA Cartage, Inc., 98-1063 (La. 12/1/98); 721 So.2d 885, where the Supreme Court found La.R.S. 23:1201 clearly violated when, despite the claimant’s status as a full time employee, the adjuster only partially paid the benefits properly due to the claimant. In Brown, the adjuster knew the claimant was a full time employee but had initially based the compensation rate on the number of hours a week the claimant worked since the claimant had, for a few weeks prior to the accident, worked less than a forty hour work week due to a business slowdown. In the matter sub judice, like the adjuster in Brown, Defendant cannot be excused for its calculation error. La.R.S. 23:1201 F is the penalty provision for violation of La.R.S. 23:1201 A and it provides:
Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
Accordingly, we reverse the compensation judge’s rule as to this issue and we now assess Defendant the penalty of $50.00 per calendar day beyond the fourteenth day after which Defendant became aware of Plaintiffs injury or 12% of unpaid 112benefits, whichever is greater, not to exceed the $2000.00 statutory limit. Additionally, we assess Defendant $2500.00 for Plaintiffs attorney fees for costs of trial and appeal. While we recognize Defendant had corrected itself and reimbursed Plaintiff before she instituted this suit, we note that absent the representation of an attorney, Plaintiff would not now be awarded the penalty owed by Defendant.
Plaintiff next asserts that Defendant should have been sanctioned under La.R.S. 23:1201.2. La.R.S. 23:1201.2 sanctions an employer with reasonable attorney fees when payments of compensations claims are discontinued in a manner that is “arbitrary, capricious, or without probable cause.” Again, we look to Brown v. Texas-LA Cartage, Inc. to guide our analysis. The Brown court distinguished between *133 the arbitrary, capricious or without probable cause” standard, which still exists in La.R.S. 23:1201.2, and that of the 1983 enactment of La.R.S. 23:1201, which disallows penalties where an employee’s rights are “reasonably controverted” or where an employer had no control over the failure to pay. Justice Kimball explained that La. R.S. 23:1201.2 bears a more difficult standard:
Unreasonably controverting a claim ... requires action of a less egregious nature than that required for arbitrary and capricious behavior. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation.
Brown, 721 So.2d at 890.
In his Reasons for Judgment, the hearing officer explained that the employer had legitimate reasons not to maintain her indemnity; “[t]he employer had provided a modified job at the pre-injury wage which had the approval of the treating physician (Dr. Porubsky), yet claimant arguably appeared not to give a genuine effort performing the modified job duties and further did not return to work after only one day.” We find the trial judge to be in the best position to weigh the evidence and testimony, and we conclude that the lower court’s failure to find Defendant’s 1 ^discontinuance of Plaintiffs benefits arbitrary, capricious or without probable cause under La.R.S. 23:1201.2 is reasonably founded and is without clear or manifest error.
Finally, Plaintiff asserts that penalties and attorney fees should have been assessed to Defendant, pursuant to La. R.S. 23:1201 again, for Defendant’s failure to pay her February 24, 1997 bill from Dr. Po, whom she saw after Defendant terminated her benefits. Again, La.R.S. 23:1201 F(2) does not allow for the assessment of penalties where a claim is “reasonably controverted.” In Brown, this phrase was explained:
[A] court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Id. at p. 9; 890.
Given the foregoing discussion finding Defendant’s termination of her benefits on February 11, 1997, not arbitrary or capricious, we find that under La.R.S. 23:1201 F(2) Plaintiffs claim at this point was “reasonably controverted” thereby precluding any assessment of fees against Defendant for its refusal at that time to pay Plaintiffs subsequent visit.
V. Assignment of Error No. 7'
Plaintiff claims that the trial judge erred in awarding legal interest on the payment of disability benefits to run from the date of judgment instead of from the due date of each installment. In the last note of the compensation judge’s Supplemental Reasons for Judgment, he ordered legal interest to be paid in accordance with McLaughlin v. Hill City Oil, Co., 97-577 (La.App. 3 Cir. 10/8/97); 702 So.2d 786, unit denied, 97-2797 (La.2/13/98); 706 So.2d 994, — the identical case Plaintiff asserts should apply. We agree that McLaughlin should apply and that interest runs from the due date of each installment of benefits.
| UVI. Defendant’s Assignments of Error

A. The Accident

Defendant asserts that the lower court erred when it awarded Plaintiff TTD and/or SEB, arguing that Plaintiff did not have an accident while within the course and scope of her employment since her injury was not sustained in a sudden or violent way. La.R.S. 23:1021 defines “accident” for purposes of Title 23, *134 Labor and Workers’ Compensation, Chapter 10, Workers’ Compensation: “(1) ‘Accident’ means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” A claimant must establish by a preponderance of the evidence that an accident occurred on that job site and that an injury was sustained. Garner v. Sheats & Frazier, 95-39 (La.App. 3 Cir. 7/5/95); 663 So.2d 57. “A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident.” Bryan v. Allstate Timber Co., 98-840, p. 3 (La.App. 3 Cir. 12/16/98); 724 So.2d 853, 855. The trial judge found that Plaintiff suffered a worked related injury stemming from the repetitive motions involved in her job as a jacket inspector. In his reasons for judgment, the judge explained that, even though Plaintiff could not isolate the exact repetitive motion that caused her injury, “[h]er inability to do so is not unreasonable under the circumstances; in other words, absent any significant contradictory evidence, it does not cast suspicion as to the accident or incident causing the disability.” Defendant argues that Plaintiffs injury falls under the statutory exemption of an injury that is nothing “more than simply a gradual deterioration or | ^progressive degeneration.” This court has considered this language in Guilbeaux v. Martin Mills, Inc., 93-1359, p.5 (La.App. 3 Cir. 5/4/94); 640 So.2d 472, 475, writ denied, 94-1444 (La.9/23/94); 642 So.2d 1291. In Guilbeaux, the claimant suffered a repetitive motion injury from her job as a “cut-tube” in a production line. Considering La.R.S. 23:1021, this court explained:
We must add our voices to those before us regarding the interpretation of “which is more than a gradual deterioration or progressive degeneration.” Surely, this phrase does not relate to an injury which is clearly spurred by work activity, such as that in the case sub judice, but only to non-work related activities. For to interpret it otherwise, would lead to an absurd result as it would negate the very purpose for which the Worker’s Compensation Act was instituted; namely to provide relief to employees whose work has caused them injury.
In light of the testimony and corroborating medical evidence, we find no manifest error in the trial court’s determination that Plaintiff indeed did suffer an injury com-pensable under Workers’ Compensation.

B. Benefits

Defendant argues that the lower court erred when it calculated and awarded Plaintiff TTD benefits from the date of the accident, March 27, 1996, until February 11, 1997, and SEB from February 12, 1997, to February 13, 1998. Defendant asserts that Plaintiff failed to meet her burden of proof for either compensation scheme.
Regarding Plaintiffs initial status as TTD, La.R.S. 23:1221(l)(c) provides, in pertinent part:
[Wlhenever the employee is not engaged in any employment or self-employment ..., compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment or self-employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self employment.
*135 hsThis court in Eglin v. United Gas Pipeline, 93-1179, p. 5 (La.App. 3 Cir. 4/6/94); 635 So.2d 599, 602, reh’g denied, 5/19/94, explained:
[La.R.S. 23:1221(l)(c) ] imposes a more stringent burden of proof on the claimant. However, the tenets of appellate review remain unchanged. The issue of disability is determined by the totality of the evidence, including both lay and medical testimony. Citations omitted. The trial court’s determination of disability is a factual question which must not be disturbed unless manifestly erroneous.
Hence, we must consider whether the trial judge was manifestly erroneous in finding Plaintiff qualified for TTD from the date of the accident through February 11, 1997. At trial, August 29, 1997, Plaintiff exhibited her right arm, which the judge acknowledged was swollen and discolored. She testified that it had been that way since March 27, 1996. Dr. Po testified that he initially diagnosed her with “teno-synovitis, or inflammation of a tendon of the right wrist in the first compartment.” The report from the occupational therapist at Francis Cabrini Hospital noted that “[p]atient exhibits decrease (sic) and painful range of motion as well as decreased strength.” Dr. Firmin testified that she “concurred with some of her previous evaluations that she did seem to demonstrate a form of reflex sympathetic dystrophy,” and she noted, “to this day I don’t think we’ve significantly improved her pain.” A review of the record reveals no manifest error in that there is sufficient evidence upon which fact finders might disagree regarding Plaintiffs ability to work through February 12, 1996. Accordingly, in the absence of such error, we decline to perform a de novo review and affirm the trial judge’s award of TTD to Plaintiff from March 27, 1996 through the day she attempted to return to work.
The trial judge explained in his Reasons for Judgment his award of SEB: “The court believes that claimant is very probably suffering from reflex sympathetic dystrophy (RSD); on this point Dr. Fir-min’s testimony was found to be persuasive. The result of her work-related injury prevents her from returning to her pre-hijury 117job, but not from any job at all.” A claimant’s treating physician’s opinion is afforded more weight than physicians hired for purposes of trial. Lemoine, 702 So.2d 951. Plaintiff must prove by a preponderance of the evidence that she is not capable of returning to her pre-injury job. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98); 708 So.2d 375. As a threshold inquiry, “[a] workers’ compensation claimant seeking SEBs bears the burden of proving, by preponderance of the evidence, that the work related injury resulted in his inability to earn wages equal to 90% or more of wages at the time of the injury; such is determined by the facts and circumstances of each individual case.” Chateau v. City of Kenner, 97-1006, p. 5 (La.App. 5 Cir. 5/13/98); 712 So.2d 256, 259, unit denied, 98-1545 (La.9/18/98); 724 So.2d 769. Once an employee meets this burden, the “employer must show that the employee is physically able to perform a certain job and that the job was offered to the employee or was available to the employee within the employee’s or employer’s reasonable geographic region. La.R.S. 23:1221(3)(c)(i).” Perrodin v. St. Landry Parish School Bd., 95-1563, p. 8 (La.App. 3 Cir. 5/22/96); 676 So.2d 612, 616. If the employee then proves, by clear and convincing evidence, that solely because of substantial pain, the employee is not capable of performing employment offered, tendered, or otherwise proven available, then the employee will then be considered incapable of performing such employment. La.R.S. 23:1221(3)(c)(ii), Id.
Plaintiff testified at trial that when she made the failed attempt to go back to work on February 12, 1996, she was told to go home and no mention was ever made to her regarding re-training for a different position. Plaintiffs testimony indicated that, at the time of trial, she did not be *136 lieve that she could go back to work; Dr. Po, on February 24, 1997, never told her that she could return to work. On August 29, 1997, the day of trial, the judge observed that Plaintiffs right hand was swollen and discolored; she testified that it had been that way since March 27, 1996. Plaintiff |isdescribed that day how her right arm felt: she “had numbness;” “it feels heavy;” “I have tingling;” “its like pins and needles sticking me;” “it goes all the way into the elbow and the shoulder.” At the time of trial she was receiving regional sympathetic blocks from Dr. Melanie Firmin. Plaintiff noted that the treatment was helping the discoloration a little and had enhanced the movement in her fingers, although it had not alleviated any pain. In his Reasons for Judgment, the trial judge explained:
Even taking into consideration defendant’s point that the video does not show a modified cuff position, the court does not believe that the position, modified or otherwise, is suitable for claimant, given her disability with her right hand and arm (extremity). Claimant’s injured extremity simply lacks the dexterity to work fast enough to suit the sewing machine or the other members of her work-unit whose overall performance would depend on her output.
We find, after a review of the record, sufficient evidence upon which a fact finder might reasonably find that Plaintiff qualified for SEB; accordingly we affirm the lower court’s rule on this matter.

C. Compensation Rate

Defendant’s final assertion of error, asserting that the lower court mis-calculated Plaintiffs compensation rate, has been addressed and disposed of earlier in this opinion.
DECREE
In light of the foregoing, we amend the lower court’s award of temporary total disability to Plaintiff for the time period of March 27, 1996 through February 11, 1997; we find the appropriate rate to be $112.50 per week, with Defendant being credited for any over payments made. We reverse the hearing officer’s denial of penalties and attorney’s fees under La.R.S. 23:1201 F, and we amend the judgment to award Plaintiff penalty fees of $50.00 for each calendar day beyond the fourteenth day after March 27, 1996, that Defendant delayed making compensation payments or 12% of unpaid benefits, whichever is greater, not to exceed $2,000.00. For the lósame, we assess Defendant $2,500.00 in attorney fees for trial and appellate work. Additionally, we amend the hearing officer’s decision which limits Plaintiff to only one follow-up visit with Doctors Weisberg, Brunet and Fermín; we now provide that Plaintiff may see these doctors for further treatment as necessary, with Defendant liable. The remainder of the hearing officer’s judgment is affirmed. Costs to be paid by Defendant.
REVERSED IN PART, AMENDED IN PART AND RENDERED.
AMY, J., CONCURS.